IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ALEXANDER RAMSEY, | § | |
| | § | MDL NO. 2543 |
| *Plaintiff*, | § | 1:14-MD-2543-JMF |
| | § | |
| v. | § | HON. JESSE M. FURMAN |
| | § | |
| GENERAL MOTORS, LLC, | § | CIVIL ACTION NO. |
| | § | |
| *Defendant.* | § | COMPLAINT |
| | § | |
| | § | JURY TRIAL DEMANDED |

**PLAINTIFF'S ORIGINAL COMPLAINT**

COME NOW Plaintiff, Alexander Ramsey (hereinafter the "Named Plaintiff" or "Plaintiff"), through the undersigned counsel, who respectfully show as follows:

**PRELIMINARY STATEMENT**

1.      The Named Plaintiff's cause of action is brought solely against GENERAL MOTORS, LLC ("New GM").  The Named Plaintiff does not assert any causes of action against General Motors Corporation ("Old GM").

2.      Any references to General Motors Corporation, Old GM, or pre-sale order conduct in this Complaint are for background and reference purposes, and to establish the genus of Old-to-New employees' knowledge of the safety defects described herein as well as said employees' wrongful, negligent actions and inactions with respect to the same.  Under the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement ("Purchase Agreement"), New GM acquired certain Old GM assets and product liabilities, including product liability for crashes involving Old GM vehicles causing personal injury, loss of life, or property damage.  New GM also acquired knowledge of Old GM's activities and the defective airbag systems identified herein,

via the mind of the employees, officers, managers, as well as via books, and records obtained and/or acquired as a result of the Purchase Agreement and subsequent Sale Order, as further defined by the Orders, Judgments, and/or Decisions of the United States Bankruptcy Court for the Southern District of New York in *Motors Liquidation Company, et al.*, *f/k/a General Motors Corp., et al.*, Case No. 09-50026 (REG).  Thus, the duties of Old GM are part of the foundation for the product liability assumed by New GM.  Further, as identified therein, the Plaintiff has claims for crashes involving an Old GM vehicle ("GM vehicles") that caused personal injury, loss of life, or property damage and New GM is, therefore, liable to the Named Plaintiff.

**PARTIES**

3.     Plaintiff Alexander Ramsey is, and was at all times relevant hereto, a resident of Homestead, Florida.

4.     Plaintiff asserts claims against Defendant General Motors LLC ("New GM") for personal injuries stemming from an incident which occurred on July 18, 2014, involving Plaintiff's 2005 Chevrolet Trailblazer (VIN 1GNDT13S452110001) (hereinafter, "Vehicle" or "Subject Vehicle".)   A recall was issued for 2005 Chevrolet Trailblazers related to automatic airbag passenger systems on vehicles originally built with cloth seats that were later reupholstered with aftermarket leather seat cover kits (Recall No 06V417000).  Plaintiff did not receive notice of this recall.  No other airbag related recalls were issued on 2005 Chevrolet Trailblazers.

5.     The Named Plaintiff's personal injury claim involves a Defective Vehicle, specifically a 2005 Chevrolet Trailblazer.  Defendant New GM is a Delaware limited liability company.  On July 10, 2009, New GM acquired substantially all of the assets and assumed product liabilities of Old GM by way of a Section 363 sale under Chapter 11 of the Bankruptcy Code.  New GM assumed product liabilities of Old GM, which filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on June 1, 2009.  Pursuant to the Agreement and other orders

of the Bankruptcy Court, Defendant New GM purchased the assets of Old GM and hired many, if

not most, of Old GM's employees including, on information and belief, most of the same senior-

level management, officers, and directors.  New GM also acquired Old GM's designs, tools,

inventory, books, records, and its key contracts, among other essential assets.

6.      Under the Purchase Agreement, New GM assumed liability for crashes after the

closing date of the Purchase Agreement involving Old GM vehicles causing personal injury, loss

of life, or property damages.

7.      New GM also assumed product liabilities of Old GM, including certain statutory

requirements:

> From and after the Closing, Purchaser [New GM] shall comply with the
> certification, reporting and recall requirements of the National Traffic and Motor
> Vehicle Safety Act, the Transportation Recall Enhancement, Accountability and
> Documentation Act, the Clean Air Act, the California Health and Safety Code and
> similar Laws, in each case, to the extent applicable in respect of vehicles and vehicle
> parts manufactured or distributed by Seller [Old GM].

8.      In addition, New GM set forth that:

> From and after the Closing, Purchaser [New GM] shall be responsible for the
> administration, management and payment of all Liabilities arising under (i) express
> written warranties of Sellers [Old GM] that are specifically identified as warranties
> and delivered in connection with the sale of new, certified used or pre-owned
> vehicles or new or remanufactured motor vehicle parts and equipment (including
> service parts, accessories, engines and transmissions) manufactured or sold by
> Sellers or Purchaser prior to or after the Closing and (ii) Lemon Laws.

9.      At all times relevant to the claims in this lawsuit, Old GM and New GM were in

the business of developing, manufacturing, and marketing cars throughout the United States

generally, and specifically in the Plaintiff's state of citizenship.  New GM has a network of

authorized retailers that sell its vehicles and parts throughout the United States.  New GM

maintains its principal place of business at 300 Renaissance Center, Detroit, Michigan.

**JURISDICTION**

10.     This Court has diversity jurisdiction over this case under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000.00 and the Plaintiff and New GM are citizens of different states.

**FACTUAL BACKGROUND**

**General Background**

11.     Plaintiff Alexander Ramsey was driving a 2005 Chevrolet Trailblazer on July 18, 2014, on SR 997 South in Hialeah, Florida, when suddenly and without warning the driver lost control, veered to the left into a ditch head-on, causing his vehicle to rollover onto the driver's side.  Although there was frontal and side damage to his vehicle, all of his airbags failed to deploy, including the frontal and side airbags.  Clearly, there was a defect in the airbag system/passenger restraint system since all of his airbags failed to deploy with the impact in this accident.

12.     An automaker should never place profits above safety and should never conceal from consumers or the public any defects that exist in its vehicles.  New GM's Vehicle Safety Chief, Jeff Boyer, recently proclaimed that "Nothing is more important than the safety of our customers in the vehicles they drive."  *GM Announces New Vehicle Safety Chief*, *available at* http://democrats.energycommerce.house.gov/sites/default/files/documents/Testimony-Barra-GM-Ignition-Switch-Recall-2014-4-1.pdf.

13.     Indeed, the first priority of a car manufacturer should be to ensure that its vehicles are safe and, in particular, have working airbag systems, passenger restraint systems, and other safety features that can prevent or minimize the threat of death or serious bodily harm in a collision.  In addition, a car manufacturer must take all reasonable steps to ensure that once a vehicle is

running, it operates safely, and its critical safety systems (such as its airbag systems and passenger restraint systems) work properly until such time as the driver shuts down the vehicle. Moreover, a manufacturer that is aware of a dangerous design defect that causes its airbags or passenger airbag systems not to function properly must promptly disclose and remedy such defects.

14.    To date, Old GM and New GM have designed, manufactured, marketed and/or sold millions of automobiles installed with defective airbag systems and passenger restraint systems in General Motors brand vehicles.

15.    In addition, or in the alternative, Old GM and New GM have sold millions of vehicles suffering from the other, similar, potentially life-threatening major defects. As will be shown at trial, all the knowledge of Old GM with respect to these defects was inherited by or is imputable to New GM within the meaning of the Orders, Judgments, and/or Decisions of the United States Bankruptcy Court for the Southern District of New York in *Motors Liquidation Company, et al., f/k/a General Motors Corp., et al.*, Case No. 09-50026 (REG).

16.    On July 9, 2009, the United States Bankruptcy Court approved the sale of substantially all of Old GM's assets to New GM which retained the vast majority of Old GM's senior and management level executives and engineers who knew that Old GM had manufactured and sold millions of vehicles afflicted with an airbag system and/or passenger restraint system defect. Those employees' knowledge regarding said defect is imputed to New GM, whenever obtained.

17.    On or around the day of its formation as an entity, New GM also acquired, *inter alia*, the knowledge of the contents of Old GM's "files" and company "documents". To that end, New GM acquired notice of the safety-related defects contained in Old GM's files, including numerous engineering reports, investigative reports, failure analyses, technical service bulletins,

and other documentation concerning the common defects in the airbag systems/passenger restraint systems described herein.

18.     Defendant New GM also had ongoing obligations under the Safety Act to monitor both Old GM and New GM vehicles on the road, to make quarterly reports to NHTSA, and to maintain all relevant records for five years.  Defendant New GM explicitly accepted Safety Act responsibilities for Old GM vehicles in §6.15 of the Sale Agreement through which it acquired substantially all of Old GM's assets.

19.     The Safety Act and related regulations require the quarterly submission to NHTSA of "early warning reporting" data, including incidents involving death or injury, claims relating to property damage received by the manufacturer, warranty claims paid by the manufacturer, consumer complaints, and field reports prepared by the manufacturer's employees or representatives concerning failure, malfunction, lack of durability, or other performance issues. 49 U.S.C. §30166(m)(3); 49 C.F.R. §579.21.  Manufacturers must retain for five years all underlying records on which the early warning reports are based and all records containing information on malfunctions that may be related to motor vehicle safety.  49 C.F.R. §576.5 to §576.6.

20.     The Safety Act further requires immediate action when a manufacturer determines or should determine that a safety defect exists.  *United States v. General Motors Corp.,* 574 F. Supp. 1047, 1050 (D.D.C. 1983).  A safety defect is defined by regulation to include any defect that creates an "unreasonable risk of accidents occurring because of the design, construction, or performance of a motor vehicle" or "unreasonable risk of death or injury in an accident." 49 U.S.C. §30102(a)(8).  Within five days of learning about a safety defect, a manufacturer must notify NHTSA and provide a description of the vehicles potentially containing the defect, including

"make, line, model year, [and] the inclusive dates (month and year) of manufacture," a description

of how these vehicles differ from similar vehicles not included in the recall, and "a summary of all

warranty claims, field or service reports, and other information" that formed the basis of the

determination that the defect was safety related.  49 U.S.C. §30118(c); 49 C.F.R. §573.6(b)-(c).

Then, "within a reasonable time" after deciding that a safety issue exists, the manufacturer must

notify the owners of the defective vehicles.  49 C.F.R. §577.5(a), §577.7(a).  Violating these

notification requirements can result in a maximum civil penalty of $15,000,000.  49 U.S.C.

§30165(a)(1).

21.    Defendant New GM used several processes to identify safety issues, including the

Transportation Recall Enhancement, Accountability and Documentation ("TREAD") database and

Problem Resolution Tracking System ("PRTS").  The TREAD database, used to store the data

required for the NHTSA early warning reports, was the principal database used by Old and New

GM to track incidents related to Old and New GM vehicles.  The database included information

from (i) customer service requests; (ii) repair orders from dealers; (iii) internal and external

surveys; (iv) field reports from employees who bought Old and New GM vehicles and from

Captured Test Fleet reports; (v) complaints from the OnStar call center; and (vi) a database

maintained by the Old and New GM legal staff to track data concerning complaints filed in court.

A TREAD reporting team would conduct monthly database searches and prepare scatter graphs to

identify spikes in the number of accidents or complaints related to various Old and New GM

vehicles.  The PRTS is a database that tracks engineering problems identified in testing,

manufacturing, through warranty data and through customer feedback.  The PRTS process

involves five steps:  identification of the issue, identification of the root cause, identification of a

solution, implementation of the solution, and feedback.

22.     Because the same employees carried out the TREAD Act obligations at Old GM and Defendant New GM, they not only retained the knowledge they acquired at Old GM – they were in fact required to do so.  This further supports the propriety of imputing the knowledge of Old GM employees to New GM, even where that knowledge stems in part from their performance of the same or similar roles at Old GM.

23.     In setting forth the knowledge and conduct of Old GM in connection with the defects set forth herein, Plaintiff alleges that New GM is liable for the actions of Old GM only with respect to the Products Liability claims for compensatory damages, which are an Assumed Liability.  With respect to Plaintiff's independent claims, Plaintiff does not seek to hold Defendant New GM liable for the actions of Old GM.  Instead, the knowledge and conduct of Old GM is generally important and relevant because it is imputed to Defendant New GM under governing principles of agency law.

24.     Numerous Old GM employees carried knowledge of airbag system and passenger restraint system defects with them into their continued employment at New GM after the July 10, 2009 Bankruptcy Sale.

25.     New GM received customer complaints of airbags failing to deploy in a frontal collision in the make and model of Plaintiff's vehicle, including the following:

- THE CONTACT OWNS A 2005 CHEVROLET TRAILBLAZER. WHILE DRIVING 35 MPH, THE CONTACT CRASHED INTO THE REAR OF ANOTHER VEHICLE. THE AIR BAGS DID NOT DEPLOY. A POLICE REPORT WAS FILED. THE DRIVER SUSTAINED VARIOUS INJURIES TO THE FACE, WHICH REQUIRED MEDICAL ATTENTION. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE VEHICLE WAS TOWED TO A TOW YARD AND WAS NOT DIAGNOSED FOR THE AIR BAG FAILURE. THE FAILURE MILEAGE WAS 140,000. (05/02/2017)

- HEAD ON COLLISION BOTH VEHICLES TRAVELING ABOUT 30MPH ON IMPACT AND TRAILBLAZER AIR BAGS DID NOT DEPLOY. I HAD MY SEATBELT ON AND WAS NOT INJURED (06/20/2016)

- THE CONTACT OWNED A 2005 CHEVROLET TRAILBLAZER 360. …WHILE DRIVING 40 MPH, THE VEHICLE STALLED WITHOUT WARNING AND THE DRIVER CRASHED INTO A DITCH. THE AIR BAGS FAILED TO DEPLOY. A

POLICE REPORT WAS FILED. THE DRIVER SUSTAINED A CONCUSSION THAT REQUIRED MEDICAL ATTENTION. THE VEHICLE WAS DESTROYED AND TOWED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 185,000. UPDATED 03/08/16

- 2005 CHEVY TRAILBLAZER WAS DRIVEN BY MY GRANDDAUGHTER. SHE WAS TRYING TO ENTER ONTO I-10 INTERSTATE AND WAS GOING TOO FAST ON THE ENTRANCE RAMP. ROAD CONDITIONS WERE HAZARDOUS AS IT WAS A SEVERE RAIN STORM. SHE HYDROPLANED AND HIT A VEHICLE IN FRONT OF HER WHICH CAUSED HER TO SPIN INTO ONCOMING TRAFFIC. SHE WAS HIT ON THE DRIVER'S SIDE AND THE TRUCK SPUN AROUND SEVERAL TIMES BEFORE IT STOPPPED. THE AIRBAG DID NOT DEPLOY!!! THE POLICE OFFICER AND THE TOW COMPANY DRIVER SAID SHE WAS LUCKY TO BE ALIVE.  MY CONCERN IS THIS COULD HAVE BEEN A FATAL ACCIDENT AND THE AIRBAG FAILED TO DEPLOY. THE TRAILBLAZER WAS TOTALED AS THE AXLE AND THE ENGINE WERE ON THE GROUND. THE DRIVER'S SIDE FRONT WHEEL CAME OFF. I HAVE ALWAYS LIKE CHEVY VEHICLES BUT AM NOW HESITANT TO PURCHASE ANOTHER ONE B/C OF THIS ISSUE WITH THE AIR BAG. (04/27/2015)

- THE CONTACT OWNED A 2005 CHEVROLET TRAILBLAZER. WHILE DRIVING VARIOUS SPEEDS, THE VEHICLE SLID AND CRASHED. THE DRIVER SIDE AIR BAG FAILED TO DEPLOY. THE VEHICLE WAS NOT INCLUDED IN NHTSA CAMPAIGN NUMBER: 06V417000 (AIR BAGS). THE CONTACT SUSTAINED LACERATIONS TO THE FACE, STITCHES UNDER THE EYEBROWS ON BOTH EYES, AND AN INJURED NECK THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE VEHICLE WAS DESTROYED. THE VIN WAS NOT AVAILABLE. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS NOT AVAILABLE (02/16/2015)

- THE CONTACT OWNS A 2005 CHEVROLET TRAILBLAZER. THE CONTACT STATED THAT WHILE DRIVING AT 25 MPH, ANOTHER VEHICLE CRASHED INTO THE FRONT PASSENGER SIDE OF THE CONTACT'S VEHICLE. AS A RESULT, THE CONTACT CRASHED INTO A SIGN AND THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED BACK INJURIES AND THE PASSENGER SUSTAINED NECK AND BACK INJURIES THAT REQUIRED MEDICAL ATTENTION. A POLICE REPORT WAS FILED. THE CONTACT WAS UNABLE TO CONFIRM IF THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 122,000. THE VIN WAS UNAVAILABLE. (01/21/2015)

- THE CONTACT OWNS A 2005 CHEVROLET TRAILBLAZER. WHILE MAKING A RIGHT TURN, ANOTHER VEHICLE CRASHED INTO THE FRONT PASSENGER SIDE OF THE CONTACT'S VEHICLE. THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED AND THERE WERE NO INJURIES SUSTAINED. THE VEHICLE WAS REPAIRED. TWO MONTHS LATER, THE CONTACT NOTICED MOISTURE ON THE FRONT PASSENGER SEAT OF THE VEHICLE. UPON FURTHER INSPECTION, THE CONTACT NOTICED THAT THERE WAS AN UNKNOWN CHEMICAL SUBSTANCE LEAKING FROM THE FRONT PASSENGER SIDE AIR BAG. THE SUBSTANCE DETERIORATED THE SEAT, CABLES, AND THE FLOOR. THE CONTACT WAS UNABLE TO STOP THE LEAK. THE VEHICLE WAS TAKEN TO A DEALER. THE TECHNICIAN WAS UNABLE TO DIAGNOSE

OR REPAIR THE VEHICLE. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS UNKNOWN. (05/17/2014)

- HIT BLACK ICE. TRUCK SLID OFF THE ROAD AND FRONT END IMPACTED THE DITCH CAUSING HEAVY DAMAGE TO THE FRONT END. AIR BAG FAILED TO DEPLOY CAUSING INJURY. (11/18/2014)

- ON, 6/17/12, MY DAUGHTER AND I WERE DRIVING EAST BOUND I-96 AND INVOLVED IN A NON-FATAL INJURY ACCIDENT BTWN BEECH DALY & INKSTER. THE ACCIDENT STARTED IN THE FAR RIGHT LANE AND ENDED WITH SUV FACING OPPOSITE DIRECTION OF TRAFFIC, LEFT LANE OF HWY. I HIT A POTHOLE, APPROXIMATE DIAMETER OF A YARD STICK, FILLED WITH WATER AND IT SEEMS LIKE I LOST CONTROL OF THE STEERING; ALMOST AS IF THE VEHICLE HAD INSTANTLY SHUT DOWN. THE VEHICLE EASILY COMPLETED AT LEAST A 360° SPIN OUT. WE WERE ABLE TO WALK AWAY WITH MINIMAL INJURIES DUE TO CLIPPING ANOTHER SUV TAIL END INSTANTLY BEFORE GOING STRAIGHT INTO THE CEMENT HIGHWAY DIVIDER! I DIDN'T REALIZE HOW MUCH MUSCLE STRENGTHENING WOULD BE INVOLVED IN MINE AND MY DAUGHTERS' HEALING PROCESS. I HAVE BEEN IN TO SEE AN INTERNIST, NEUROLOGICAL SURGEON, PHYSICAL THERAPIST, OCCUPATIONAL THERAPIST, MASSAGE THERAPIST, NOT TO MENTION ALL OF THE CAT SCANS, MRIS, ETC. PERFORMED AT MULTIPLE HOSPITAL LOCATIONS. MY VEHICLE INSURANCE CARRIER WAS NOTIFIED OF MY HEALTH INSURANCE RESTRICTIONS PRIOR TO SIGNING WITH THEM AND PRIOR TO THE MVI. THE REDFORD, MI POLICE REPORT INDICATES NO INJURIES BECAUSE NEITHER MYSELF NOR MY DAUGHTER WERE TAKEN AWAY BY AMBULANCE SINCE THE INJURIES WERE NOT LIFE THREATENING AND WE WERE BOTH IN FORMAL ATTIRE, BOTH BRIDAL PARTY MEMBERS. THE VEHICLE WAS TOWED AND TOTALED BY INSURANCE, LOAN PAID IN FULL; HOWEVER, APPARENTLY CONCERNS HAVE AROSE TO, PERHAPS, TO THE EXTENT OF OUR INJURIES SO NO MEDICAL PROCEDURES HAVE NOT BEEN PAID TO ANY OF THE SERVICE PROVIDERS, AS OF TODAY'S DATE (11/15/14). MY DAUGHTER AND I WERE PICKED UP BY ANOTHER GUEST ATTENDEE SO WE WEREN'T HOLDING UP PROGRESS, BEING IN THE WEDDING PARTY AND CARRYING ALL DECOR FOR AFTERWARD FESTIVITIES. NONE OF THE VEHICLE AIR BAGS DEPLOYED AND WE WERE GOING 60-65MPH (FRONT, SIDE, REAR, NO WHERE)! THANK YOU, GM, MDOT AND CURRENT EMPLOYEES FOR STAYING TRUE TO USA & MI! (06/17/2012)

- THE ROADS WHERE SLIGHTLY WET AND I HIT A GUARDRAIL ON A MOUNTAIN ROAD GOING APPROX 30MPH - 35MPH. DESTROYING THE FRONT PASSENGER BUMPER, TURN SIGNAL LIGHT, TIRE, AXLE, SUSPENSION, PRETTY MUCH EVERYTHING ON THE PASSENGER SIDE AND THE GUARDRAIL OF COURSE. THE AIR BAGS NEVER DEPLOYED! POLICE REPORT WAS TAKEN, NO FAULT OR MAJOR INJURIES, THE TRUCK COULD NOT BE DRIVEN AND AGAIN THE AIR BAGS DID NOT DEPLOY! JUST MAKES ME THINK (IF I HAD WENT THROUGH THE GUARDRAIL AND DOWN THE MOUNTAIN INTO A TREE) WOULD THE AIR BAGS EVER WORK AND SAVE MY LIFE? PLEASE RECALL THIS ISSUE!! (08/16/2014)

- THE CONTACT OWNS A 2005 CHEVROLET TRAILBLAZER 360. THE CONTACT STATED THAT WHILE DRIVING 55 MPH, ANOTHER VEHICLE CRASHED INTO THE CONTACT'S VEHICLE AND THE AIR BAG FAILED TO DEPLOY. THE

DRIVER SUSTAINED INJURIES TO THE NECK AND THE FRONT PASSENGER SUSTAINED INJURIES TO THE RIGHT LEG WHICH REQUIRED MEDICAL ATTENTION. THE CONTACT WAS UNCERTAIN IF A POLICE REPORT WAS FILED. THE VEHICLE WAS REPAIRED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 3,000. (06/01/2005)

- THE CONTACT OWNS A 2005 CHEVROLET TRAILBLAZER. WHILE DRIVING APPROXIMATELY 45 MPH, THE VEHICLE FAILED TO STOP WHEN THE BRAKES WERE ENGAGED. AS A RESULT, THE VEHICLE CRASHED INTO ANOTHER VEHICLE. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT MENTIONED THAT THE REAR SEAT BELTS THAT WERE RESTRAINING TWO CHILDREN BECAME UNBUCKLED AND EJECTED THE CHILDREN FROM THEIR CHILD SAFETY SEATS. A POLICE REPORT WAS FILED AND THERE WERE NO INJURIES. THE VEHICLE WAS TOWED TO AN AUTO BODY SHOP. THE APPROXIMATE FAILURE MILEAGE WAS 136,000 (09/12/2014)

- THE CONTACT OWNS A 2005 CHEVROLET TRAILBLAZER. THE CONTACT STATED THAT WHILE TRAVELING APPROXIMATELY 40 MPH, THE VEHICLE SUDDENLY STALLED AND VEERED INTO ONCOMING TRAFFIC. THE DRIVER CRASHED INTO ANOTHER VEHICLE AND THE AIR BAGS FAILED TO DEPLOY UPON IMPACT. THE DRIVER SUSTAINED FACE, BACK, AND NECK INJURIES. THE DRIVER OF THE SECOND VEHICLE WAS NOT INJURED. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS NOT CONTACTED ABOUT THE FAILURE. THE VEHICLE WAS NOT DIAGNOSED. THE FAILURE MILEAGE AND VIN WAS NOT AVAILABLE. (09/10/2012)

- I WAS APPROACHING A LINE OF CARS STOPPED FOR A RED LIGHT. THE WEATHER WAS CLEAR AND I WAS DECELERATING AND MOVING AT APPROXIMATELY 20 ± MPH. AS I BEGAN TO APPLY THE BRAKES, THEY FAILED CATASTROPHICALLY. THE BRAKE PEDAL HIT THE FLOOR,WITH NO RESISTANCE, AND I RAN INTO THE BACK OF A STOPPED PICKUP TRUCK?.WATCHING IT ALL UNFOLD BEFORE MY EYES WHILE MY FOOT FRANTICALLY PUMPED THE BRAKE PEDAL, WHICH HIT THE FLOOR WITH EACH ATTEMPT. ALTHOUGH IT WAS A FRONT END COLLISION, THE AIRBAGS DID NOT DEPLOY. (01/27/2012)

- THE CONTACT OWNS A 2005 CHEVROLET TRAILBLAZER. THE CONTACT STATED THAT WHILE DRIVING 30 MPH ATTEMPTING TO AVOID IMPACTING A DEER ON THE ROAD, HE CRASHED OFF A 9 FOOT EMBANKMENT AND NONE OF THE AIR BAGS DEPLOYED. THE CONTACT BECAME UNCONSCIOUS AFTER HIS HEAD CRASHED INTO THE STEERING WHEEL. ALSO, THE CONTACT SUFFERED SEVERE NECK INJURIES. THE VEHICLE WAS INSPECTED BY THE DEALER BUT THE RESULTS WERE INCONCLUSIVE. THE MANUFACTURER WAS NOTIFIED BUT OFFERED NO ASSISTANCE. THE FAILURE AND CURRENT MILEAGE WAS 108,429. THE VIN WAS UNAVAILABLE. UPDATED 10/31/12 *CN UPDATED 11/9/2012 *JS (05/20/2012)

- THE CONTACT OWNS A 2005 CHEVROLET TRAILBLAZER. THE CONTACT WAS DRIVING IN RAINY WEATHER AT VARIOUS SPEEDS WHEN HE UNEXPECTEDLY CRASHED INTO ANOTHER VEHICLE. THE AIR BAGS FAILED TO DEPLOY. A POLICE REPORT WAS FILED FOR THE INCIDENT. THE CONTACT SUSTAINED SEVERE HEAD TRAUMA AND WAS TRANSPORTED BY

AN AMBULANCE TO THE HOSPITAL. THE VEHICLE WAS DESTROYED AND TOWED TO A SAVAGE FACILITY. THE MANUFACTURER WAS NOT NOTIFIED OF THE PROBLEM. THE APPROXIMATE FAILURE MILEAGE WAS 122,000. UPDATED 10/31/12 *BF (09/27/2012)

- THE CONTACT OWNS A 2005 CHEVROLET TRAILBLAZER. THE CONTACT WAS TRAVELING 45 MPH WHEN HE CRASHED AGAINST THE STREET MEDIAN, A UTILITY POLE AND THEN INTO A BUILDING. THE CONTACT STATED THAT NONE OF THE AIR BAGS IN THE VEHICLE DEPLOYED. THE CONTACT SUSTAINED LESIONS TO THE FACE, A CONTUSION TO THE RIGHT EYE AND CONTUSIONS TO THE CHEST AND LOWER ABDOMEN AREA. THE VEHICLE WAS DESTROYED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE, VEHICLE WAS INSPECTED HOWEVER, THE FINDINGS WERE NOT DISCLOSED TO CONTACT. THE FAILURE AND CURRENT MILEAGE WAS 118,000. (06/27/2012)

- THE CONTACT OWNS A 2005 CHEVROLET TRAILBLAZER. THE CONTACT STATED THAT THE DRIVER WAS TRAVELING BETWEEN 30 AND 40 MPH WHEN THE VEHICLE CRASHED INTO ANOTHER VEHICLE HEAD ON AND THE AIR BAGS FAILED TO DEPLOY. THE DRIVER SUSTAINED INJURIES TO THE HEAD, MOUTH, CHEST, LEG, AND WRIST. A POLICE REPORT WAS FILED. THE VEHICLE WAS DESTROYED. THE VEHICLE WAS NOT TAKEN TO THE DEALER. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE AND CURRENT MILEAGE WAS 40,000. (07/27/2012)

- THE CONTACT OWNS A 2005 CHEVROLET TRAIL BLAZER. THE CONTACT STATED THAT WHILE ATTEMPTING TO PARK, SHE ACCIDENTALLY APPLIED THE ACCELERATOR AND THE CRASHED INTO SOME CONCRETE STEPS,LEADING TO A BUILDING. THE FRONT DRIVER SIDE AIR BAGS DID NOT DEPLOY. THE CONTACT SUSTAINED INJURIES TO THE CHEST AND BACK. THE VEHICLE WAS TOWED TO A LOCAL BODY SHOP BUT WAS NOT REPAIRED. THE FAILURE AND THE CURRENT MILEAGE WAS 100,000. UPDATED 07/19/12 (06/01/2012)

- I WAS APPROACHING A TRAFFIC SIGNAL. I HIT MY BRAKES WHEN REALIZING THE LIGHT WAS RED. THE ANTI-LOCK BRAKES LOCKED UP AND I SLID THROUGH THE LIGHT HITTING A TURNING CAR. THIS RESULTED IN A FRONTAL IMPACT, BUT THE AIRBAGS DID NOT DEPLOY. THE VEHICLE IS TOTALED. (05/31/2012)

- AIR BAG DID NOT DEPLOY IN HEAD-ON COLLISION. (04/28/2011)

- THE CONTACT OWNS A 2005 CHEVROLET TRAILBLAZER. THE CONTACT STATED THAT WHILE DRIVING 35 MPH ON A SLIPPERY ROAD, THE BRAKE PEDAL EXTENDED TO THE FLOORBOARD WHEN DEPRESSED. THE VEHICLE WENT INTO A DITCH AS A RESULT AND ROLLED OVER TWICE, ENDING UPSIDE DOWN. THE AIR BAGS DID NOT DEPLOY. THE VEHICLE WAS DESTROYED. THE CURRENT AND FAILURE MILEAGES WERE UNKNOWN. (12/08/2010)

- THE CONTACT OWNS A 2005 CHEVROLET TRAIL BLAZER. THE CONTACT WAS DRIVING 50 MPH ON A SLICK MOUNTAIN ROAD WHEN THE VEHICLE HYDROPLANED AND CRASHED INTO THE SIDE OF A MOUNTAIN BEFORE FALLING INTO A DITCH. THE AIR BAGS DID NOT DEPLOY AND THE CONTACT

AND TWO PASSENGERS SUSTAINED INJURIES. THE VEHICLE WAS DESTROYED. THE VEHICLE WAS NOT INSPECTED FOR THE FAILURE OF THE AIR BAGS. THE CONTACT WAS ADVISED BY HIS INSURANCE ADJUSTER THAT THE AIR BAGS SHOULD HAVE DEPLOYED. A POLICE REPORT WAS AVAILABLE. THE VIN WAS NOT AVAILABLE. THE FAILURE AND CURRENT MILEAGE WAS APPROXIMATELY 100,000. (07/09/2010)

- I WAS IN AN ACCIDENT WHERE ANOTHER DRIVER PULLED OUT IN FRONT OF ME CROSSING ONCOMING TRAFFIC. I HIT HIM BROADSIDE DOING APPROXIMATELY 30-35 MILES PER HOUR. MY FRONT END WAS NEARLY SHOVED ALL THE WAY UP TO THE WINDSHIELD. MY 2005 TRAILBLAZER WAS TOTALED. MY AIRBAG DID NOT DEPLOY AND IF IT WASN'T FOR MY SEATBELT I WOULD HAVE WENT THROUGH THE WINDSHIELD THE IMPACT WAS SO HARD. I SUSTAINED A HURT SHOULDER AND ARM AND PROBABLY WOULDN'T HAD SUCH A PAINFUL INJURY IF THE AIRBAG HAD OF DEPLOYED. (04/29/2010)

- 2005 CHEVROLET TRAILBLAZER. AIR BAGS DID NOT DEPLOY DURING AN ACCIDENT. (01/02/2010)

- LOST CONTROL OF CAR ON NARROW ROAD UNDER NORMAL DRIVING CONDITIONS. COLLISION INTO TWO TREES HEAD ON. DRIVER SIDE AIRBAG NEVER DEPLOYED. (04/13/2009)

- AIRBAGS DID NOT DEPLOY. A DRIVER PULLED OUT IN FRONT OF MY WIFE. SHE WAS TRAVELING AT NEARLY 40MPH. SHE STRUCK ANOTHER VEHICLE BROAD SIDE. THE AIRBAGS DID NOT DEPLOY. THE FRONT BUMPER FROM OUR TRAILBLAZER WAS ABOUT 30 YARDS BEHIND OUR VEHICLE. MY WIFE EXPERIENCED SEVERE BRUISING TO ABD AND CHEST. HER SEATBELT WAS IN USE. (04/20/2009)

- THE CONTACT OWNS A 2005 CHEVROLET TRAILBLAZER. THE CONTACT WAS THE PASSENGER IN A VEHICLE TRAVELING 35 MPH ON ICY ROAD CONDITIONS. ANOTHER VEHICLE PULLED OUT IN FRONT OF THEM AND CRASHED INTO THE VEHICLE. THE VEHICLE WAS DESTROYED AND THE AIR BAGS FAILED TO DEPLOY. THE CONTACT WAS TRANSPORTED TO THE HOSPITAL BY AMBULANCE. HER NECK WAS SNAPPED BACKWARDS. THE SEAT BELT PROPERLY RESTRAINED HER AT THE TIME OF THE CRASH. A POLICE REPORT WAS FILED AND THE OTHER DRIVER RECEIVED A CITATION. THE DEALER WAS UNABLE TO DETERMINE WHY THE AIR BAGS FAILED. THE FAILURE MILEAGE WAS 80,000. (01/12/2009)

- MY DAUGHTER HAD AN ACCIDENT ON 12/16/2008. SHE HAS(HAD) A 2005 CHEVROLET TRAILBLAZER LS, 2 WHEEL DRIVE SUV. WHILE DRIVING ON THE OHIO TURNPIKE DURING A SNOW STORM SHE LOST CONTROL AND HAD A HEAD ON CRASH WITH A CEMENT RETAINING WALL WHILE TRAVELING BETWEEN 25 TO 35 MILES PER HOUR. THE AIR BAG DID NOT DEPLOY DURING THE ACCIDENT AND SHE SLAMMED HARD INTO THE STEERING WHEEL RESULTING IN A CONCUSSION, CHEST INJURIES, SORE WRIST, DIZZINESS, AND STILL HAS RINGING IN ONE EAR. SHE DID HAVE HER SAFETY BELT ON AT THE TIME OF THE ACCIDENT AND ALWAYS WEARS IT. WE ARE BAFFLED AS TO WHY THE AIR BAG DID NOT COME OUT AS IT WOULD HAVE SAVE HER MUCH PAIN. THE CAR IS A TOTAL WRECK AS DESCRIBED BY THE PONTIAC DEALER THAT HER INSURANCE COMPANY TOWED THE SUV TO FOR

REPAIRS. THE TRAILBLAZER SUSTAINED MUCH DAMAGE SUCH AS A BENT FRAME, BROKEN TRANSMISSION, ALL OF THE MOTOR MOUNTS AND THE TRANSMISSION MOUNTS BROKE LOOSE FROM THE FRAME, BENT STEERING WHEEL, AND ALL PARTS FROM THE ENGINE FORWARD ARE EITHER GONE OR BENT BEYOND REPAIR. WITH THIS VIOLENT OF A CRASH NO ONE HAS BEEN ABLE TO TELL US WHY THE AIR BAGS DID NOT DEPLOY. WE BOUGHT THIS SUV USED FROM A CHEVY DEALER IN JULY OF 2005 AND IT HAD AROUND 8000 MILES ON IT AT THAT TIME. I WOULD LIKE TO KNOW IF THERE IS SOME WAY OF CHECKING THE FUNCTIONALLY OF THIS AIR BAG TO SEE IF THERE MAY BE A POSSIBLE PROBLEM WITH IT. HER CRASH WAS HEAD ON AND IN MY OPINION VIOLENT ENOUGH TO ACTIVATE THE DRIVER SIDE AIR BAG. ANY SUGGESTIONS AS TO WHAT WE SHOULD DO? (12/16/2008)

- THE CONTACT OWNS A 2005 CHEVROLET TRAILBLAZER. WHILE DRIVING APPROXIMATELY 45 MPH, THE CONTACT CRASHED INTO ANOTHER VEHICLE, WHICH RESULTED IN A THREE CAR PILE UP. THE FRONT END OF HER VEHICLE WENT UNDERNEATH THE PRECEDING VEHICLE. THE AIR BAGS FAILED TO DEPLOY. SHE WAS UNABLE TO RECEIVE ASSISTANCE FROM ON STAR DUE TO THE AIR BAG FAILURE. THERE WERE NO PRIOR FAILURES WITH HER VEHICLE. THE CONTACT AND THREE CHILDREN IN SAFETY SEATS SUSTAINED MINOR INJURIES. A POLICE REPORT WAS FILED. THE CURRENT AND FAILURE MILEAGES WERE 76,000. (09/07/2005)

- THE CONTACT OWNS A 2005 CHEVROLET TRAILBLAZER. WHILE DRIVING 60 MPH, THE CONTACT STRUCK THE GUARDRAIL. THE VEHICLE WAS DESTROYED AND THE AIR BAGS FAILED TO DEPLOY. THE CONTACT HAS PICTURES OF THE VEHICLE. SHE WAS TRANSPORTED TO THE HOSPITAL AND IS CURRENTLY IN PAIN. A POLICE REPORT WAS FILED. THE AIR BAGS WERE NOT SERVICED PRIOR TO THE CRASH. THE VIN WAS UNKNOWN. THE FAILURE MILEAGE WAS 44,000. (08/25/2008)

- WHY AIR BAGS DID NOT DEPLOY. (02/10/2008)

- THE CONTACT OWNS A 2005 CHEVROLET TRAILBLAZER EXT 370. WHILE DRIVING ON AN ICY BRIDGE AT APPROXIMATELY 40 MPH, THE VEHICLE SPUN AND STRUCK A BRICK WALL. THE AIR BAGS FAILED TO DEPLOY. THE CONTACT SUSTAINED INJURIES AND A POLICE REPORT WAS FILED. THE VIN WAS UNKNOWN. THE CURRENT AND FAILURE MILEAGES WERE 25,000. (02/08/2008)

- I WAS DRIVING ON A 2 LANE ROAD GOING 45MPH. A CAR WAS FOLLOWING CLOSE BEHIND ME SO I WENT TO GET INTO RIGHT LANE AND MY TRUCK DID 5 360 AND HIT 3 TREES HEAD ON AND AIR BAG NEVER DEPLOYED. (02/21/2008)

- I WAS DRIVING ON AN ELEVATED INTERSTATE AND LOST CONTROL OF THE VEHICLE. I HIT THE GUARDRAIL IN A DIRECT FRONTAL IMPACT. THE ENTIRE FRONT OF THE CAR WAS CRUSHED ABOUT 40 INCHES. THE CAR IS TOTALED BUT THE AIRBAGS DID NOT DEPLOY. I SUFFERED SOME INJURIES ON MY HEAD EVEN THOUGH I HAD MY SEATBELT ON. (10/06/2007)

- THE CONTACT'S 2005 CHEVY TRAILBLAZER WAS PURCHASED USED ON AUGUST 13, 2005 FROM BERGLUND CHEVROLET OF VIRGINIA, WITH 13000 MILES. THE VEHICLE WAS INVOLVED IN AN ACCIDENT ON JANUARY 8TH,

14

2007 WERE THERE WAS ONE FATALITY AND FIVE PEOPLE WERE INJURED. A SECOND VEHICLE, A BUICK LASABRE, FAILED TO STOP AT STOP SIGN WHILE MAKING A LEFT HAND TURN. THE CONTACT¿S VEHICLE STRUCK THE SECOND VEHICLE DIRECTLY ON THE DRIVER¿S SIDE. THE CONTACT¿S VEHICLE WAS TRAVELING AT 50 MPH. THE DRIVER OF THE SECOND VEHICLE WAS PRONOUNCED DEAD AT THE SCENE. THE CONTACT¿S VEHICLE PASSENGER AND DRIVER SIDE AIR BAGS NEVER DEPLOYED, EVEN THOUGH THERE WERE PASSENGERS IN ALL SEATS. SIX STATE TROOPERS WERE ON THE SCENE AND NO ONE WAS SITED. (01/08/2007)

- THE CONTACT STATED WHILE DRIVING 40 MPH ENTERING THE FREEWAY, THE VEHICLE REAR ENDED ANOTHER VEHICLE AND NONE OF THE AIR BAGS DEPLOYED. THE AIRBAG WARNING LIGHT DID NOT ILLUMINATE PRIOR TO THE CRASH. A POLICE REPORT WAS FILED IN THE STATE OF CALIFORNIA. THERE WERE TWO PEOPLE INJURED; THE NOSE OF THE CHILD WAS BLEEDING AND THE CONTACT SUFFERED A NECK INJURY. THE CHILD WAS 6 YEARS OLD AND THE CONTACT WAS 22 YEARS OLD. BOTH OF THE PASSENGERS WERE WEARING SEAT BELT. THE WEATHER WAS CLOUDY. A POLICE REPORT WAS PROCESS. THE SERVICE DEALER AND THE MANUFACTURER WERE NOT NOTIFIED. (11/08/2006)

- ON SEPTEMBER 28TH 2006 I WAS DRIVING MY 2005 CHEVY TRAILBLAZER EXT DOWN THE ROAD BETWEEN 55 AND 60 MPH. IT HAD STARTED RAINING ABOUT 5 MINUTES EARLIER. I STARTED UP THE HILL AND WAS APPROACHING THE OTHER ROAD I NEEDED TO TURN ON AND GENTLY APPLIED THE BRAKES. AS SOON AS I APPLIED THE BRAKES, THE VEHICLE WENT OUT OF CONTROL. I TRIED TO PUMP THE BRAKES AND GET THE VEHICLE BACK INTO CONTROL BUT HAD NO LUCK. I THEN CROSSED THE CENTER LINE AND CRASHED HEAD ON INTO THE GUARD RAIL ON THE OTHER SIDE OF THE ROAD. AFTER I HIT THE GUARD RAIL I BOUNCED OFF OF THAT AND HIT AN ON COMING VEHICLE IN THE PASSENGER SIDE WITH THE FRONT END OF MY CAR. I THEN PROCEEDED TO CONTINUE BACK TO THE OTHER SIDE OF THE ROAD AND JUMP A 4FT DITCH AND FINALLY CAME TO A STOP ON THE OTHER SIDE OF THE DITCH. THE FUNNY THING IS THAT THIS ALL HAPPENED WHILE I WAS TRAVELING UP HILL!!! I TRULY BELIEVE THE SO CALLED FOUR WHEEL ANTI-LOCK BRAKES FAILED. THE AIR BAGS NEVER DEPLOYED EITHER! AFTER THE CRASH THE RIGHT FRONT TIRE HAD A HUGE HOLE IN THE SIDE WALL AND I AM NOT TOO SURE THAT THIS WASN'T PART OF THE PROBLEM. THE TORN PART OF THE TIRE IS STICKING OUT AND SEEMS LIKE IT FAILED TOO. I JUST WISH I COULD GET SOMEONE TO INVESTIGATE THIS (GOODYEAR TIRES). (09/28/2006)

- 7/8/06, WHILE TRAVELING HIGHWAY 31 IN NILES, MICHIGAN, SPEED LIMIT OF 70 MPH, WE HIT A DEER HEAD ON WITH OUR 2005 CHEVY TRAILBLAZER LS, S/N. WE HAD NO TIME TO EVEN BRAKE PRIOR TO THE IMPACT. THE IMPACT TOOK OUT THE FRONT END OF THE CAR, PUSHING THE RADIATOR BACK INTO THE ENGINE COMPARTMENT. NEITHER AIR BAG DEPLOYED. THERE WERE 4 PASSENGERS IN THE VEHICLE, INCLUDING AN 11-YEAR OLD BOY, AND A 14-YEAR OLD BOY. (07/08/2006)

- THE CONTACT STATED WHILE TRAVELING 55 MPH, THE DRIVER FELL ASLEEP AND THE VEHICLE VEERED OFF THE ROAD HITTING A TREE. THE IMPACT WAS IN THE CENTER OF THE FRONT END, WHEN THIS OCCURRED,

THE AIRBAGS DID NOT DEPLOY. THE DRIVER SUSTAINED MINOR INJURIES, ALTHOUGH THE SEAT BELT WAS WORN. A POLICE REPORT WAS TAKEN AT THE SCENE. THE VEHICLE WAS TOWED TO AN INDEPENDENT REPAIR SHOP AND THE TECHNICIAN DETERMINED THE FENDER CUT THE WIRES FOR THE AIRBAG SENSOR. THE MANUFACTURER HAS BEEN ALERTED. (05/12/2006)

- DT: THE CONTACT'S BOY FRIEND WAS TRAVELING AT 78 MPH WHEN HE LOST CONTROL OF THE VEHICLE, AND IT WAS INVOLVED IN A FRONTAL IMPACT. THE VEHICLE ROLLED OVER SIX TIMES. UPON IMPACT, THE AIR BAGS DID NOT DEPLOY. THE CONTACT AND PASSENGER SUSTAINED INJURIES. MANUFACTURER WAS NOT CONTACTED. (11/20/2005)

- CHEVY TRAILBLAZER ('05 OR '06) REAR ENDED ANOTHER VEHICLE AT A SPEED FAST ENOUGH TO TOTAL THE TRAILBLAZER. THE AIRBAG DID NOT DEPLOY AND THE DRIVER SUSTAINED CHEST AND HEART INJURIES. (10/19/2005)

- I WAS INVOLVE IN AN ACCIDENT WHERE I HAVE LOST CONTROL OF A CHEVROLET TRAILBLAZER AND HIT A CENTER DIVIDER ON THE FREEWAY. WITH THE FRONT BUMPER SMASHED ONTO THE CENTER DIVIDER, THE AIR BAG FAILED TO DELPLOY. (05/12/2005)

26.     New GM received customer complaints of airbag failures in front end collisions. Although Old GM issued a recall (06V417000) on some 2005 Chevrolet Trailblazers in 2006, neither Old GM nor New GM ever issued a recall to Plaintiff related to the failure of the airbags to deploy in a crash with frontal impact in his vehicle.

27.     Throughout the years in which it received these complaints, Old and New GM marketed GM brand vehicles as safe. For example, in a section called "Safety," Old GM's Chevrolet website stated:

> **OUR COMMITMENT**
>
> "Your family's safety is important to us. Whether it's a short errand around town or a cross-country road trip, Chevrolet is committed to keeping you and your family safe – from the start of your journey to your destination. That's why every Chevrolet is designed with a comprehensive list of safety and security features to help give you peace of mind."

28.     Similarly, Old GM promoted its Saturn vehicle line with television advertising tag lines like, "Putting people first," and, "Saturn. People First." Saturn's print ad campaign featured advertisements with statements such as the following: "Need is where you begin. In cars, it's about

things like reliability, durability and, of course, safety. That's where we started when developing our new line of cars." In sum, in order to increase sales, Old GM touted the safety of its vehicles, and New GM did nothing to correct the false representations of safety to the millions of vehicle owners whose cars were affected by defects in its airbag system and passenger restraint systems. Further, throughout the existence of both Old and New GM, GM dealerships continued to sell "certified pre-owned cars" that still had defective airbag and passenger restraint systems. New GM, which profited indirectly from these sales, certified the safety of these vehicles to the public, explaining that the certification process involved testing of over a hundred components, including the airbag and passenger restraint systems. This safety certification was made despite many of the affected vehicles still having the defective airbag and passenger restraint systems. As a result, many owners and users of the affected vehicles purchased and drove the vehicles in reliance upon these safety representations.

**AIRBAG/PASSENGER RESTRAINT SYSTEM DEFECTS**

29.    Plaintiff's vehicle was equipped with driver and front passenger frontal airbags. However, these airbags did not deploy during the subject collision even though there was a frontal impact.

30.    Plaintiffs injuries were also caused by the failure of airbag to deploy in this collision.

31.    The defects in the design, manufacture and/or assembly of the Subject Vehicle's safety components and the negligence of GM as described herein, resulted in neither of the frontal airbags being deployed.

32.    Prior to February 1, 2016, Old GM designed, built, assembled, manufactured, tested, advertised, marketed, and distributed the Subject Vehicle, which contained design defects when it left the possession of Old GM.

33.    At all times material hereto, GM had a duty to use reasonable care to design, manufacture, market, modify and/or sell the Subject Vehicle and its Airbag System/Passenger Restraint System such that they would be reasonably safe for their intended purposes and pass without objection throughout the trade or industry.

34.    Notwithstanding this duty, GM carelessly, recklessly, negligently designed, manufactured, and sold the Subject Vehicle and its Airbag System/Passenger Restraint System such that there was an inherent defect in the Subject Vehicle, namely the Airbag System/Passenger Restraint System was subject to failure and did fail to operate as intended and designed at the time and place of the collision described herein.

35.    GM carelessly, recklessly and negligently failed to adequately test and inspect the Airbag System/Passenger Restraint System to determine whether prospective and foreseeable owners, users, drivers and occupants of the Subject Vehicle would be exposed to an unreasonable risk of physical harm during foreseeable automobile collisions of sufficient force to activate the Airbag System/Passenger Restraint System.

36.    All damages described herein were caused by the design, manufacture, marketing and distribution of a defective motor vehicle, both generally and in the following respects:  (a) the vehicle was not crashworthy; the vehicle was defective, unsafe and inadequate for the use for which it was made and intended to be used, including foreseeable collisions; the vehicle was not designed and equipped with alternative, technologically feasible and safer components which would have been capable of minimizing the risk of significant injury associated with frontal

collisions and, therefore, the risks of harm outweighed the benefits of the selected defectively designed airbag system; the vehicle was defective, unsafe and inadequate for the use in which it was made and intended because it was equipped with an unsafe and defectively designed airbag system/passenger restraint system because in foreseeable collisions the airbag would not deploy in a necessary and timely manner; the vehicle was defective and unsafe and inadequate because it did not include necessary and adequate warnings that the airbag would fail to deploy under foreseeable circumstances; the vehicle was defective, unsafe and inadequate because the airbag system/passenger restraint system did not perform in a manner that an ordinary consumer would expect under the facts that will be established at trial; and the airbag system/passenger restraint system designed and selected for this model vehicle was inadequately and unsafely designed so that the airbags did not deploy in frontal collision event that warranted airbag deployment to protect the occupants.

37. Because of its defective design, manufacture and production, especially the airbag system/ passenger restraint system in the Plaintiff's vehicle, this vehicle was inherently dangerous in the event of foreseeable frontal collisions.

38. GM breached its duties owed to Plaintiff in that it failed to recall and retrofit Plaintiff's vehicle.

39. Plaintiff was not aware of and could not have reasonably discovered the defective condition and dangerous nature of the Subject Vehicle and its Airbag System/Passenger Restraint System.

**CLAIMS AGAINST GENERAL MOTORS, LLC BROUGHT BY NAMED PLAINTIFF UNDER FLORIDA LAW**

**COUNT 1 – Negligence**

40.     The Named Plaintiff re-alleges as if fully set forth, each and every allegation set forth herein.

41.     Under the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement wherein New GM acquired certain Old GM assets, New GM assumed product liability for crashes involving Old GM vehicles causing personal injury, loss of life or property damages. New GM also acquired knowledge of Old GM's activities and the Airbag System/Passenger Restraint System defect, and other serious defects, via the mind of the employees, officers, managers, as well as via books and records obtained and/or acquired as a result of the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement and subsequent Sale Order. Thus, the duties of Old GM are part of the foundation for the product liability assumed by New GM.  Further, as identified therein, certain Named Plaintiff has claims for crashes involving Old GM vehicles that caused personal injury, loss of life or property damage and New GM is therefore liable to the Named Plaintiff.

42.     Old GM and New GM owed Named Plaintiff a duty to design, manufacturer, fabricate, assemble, inspect, market, distribute, sell, and/or supply products in such a way as to avoid harm to persons using them such as the Named Plaintiff.

43.     Old GM and New GM owed the Named Plaintiff a duty to detect known safety defects in GM vehicles.

44.     Old GM and New GM owed the Named Plaintiff a duty, once it discovered the Airbag System/Passenger Restraint System defect, to provide thorough notice of the defect,

including a warning that the defective vehicles should not be driven until an appropriate repair procedure is developed and performed.

45.    Old GM and New GM owed the Named Plaintiff a duty, once it discovered the Airbag System/Passenger Restraint System defect, to ensure that an appropriate repair procedure was developed and made available to drivers.

46.    Old GM and New GM knew that their customers, such as the Named Plaintiff, expect that the company will employ all reasonable efforts to detect safety defects, warn drivers of their existence, and develop and make available an appropriate repair procedure.

47.    Old GM and New GM efforts to discover, provide notice of, and provide repair procedures for safety related defects exist for the benefit of the Named Plaintiff and other drivers of GM vehicles.  Old GM and New GM was aware that by providing maintenance and repair information and assistance, including through its authorized dealerships, Old GM and New GM had a responsibility to the Named Plaintiff and other drivers to take the reasonable measures listed above.

48.    By reason of New GM's assumption of product liability under the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement for crashes involving Old GM vehicles causing personal injury, loss of life or property damages, the failures of Old GM described above that contributed to or were causally connected to the injuries sustained by Named Plaintiff were among the product liability of Old GM assumed by New GM.

49.    Independent of any failures by Old GM as described herein, New GM breached its duties to the Named Plaintiff by failing to provide appropriate notice of and repair procedures for the Named Plaintiff's Defective Vehicle.  In doing so, New GM departed from the reasonable standard of care required of it.

50.    It was foreseeable that if the New GM did not provide appropriate notice and repair procedures for the Defective Vehicles, the Named Plaintiff and other drivers would be endangered.

51.    The Named Plaintiff's injuries were reasonably foreseeable to Old GM and New GM.

52.    The Named Plaintiff could not through the exercise of reasonable diligence have prevented the injuries caused by Old GM and New GM's negligence.

53.    Old GM's and New GM's acts and omissions, when viewed objectively from the actor's standpoint, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Old GM and New GM nevertheless proceeded with conscious indifference to the rights, safety and welfare of others.

54.    As will be shown at trial, all the foregoing knowledge of Old GM in all the preceding paragraphs was inherited by or is imputable to New GM.

## COUNT II - Strict Liability – Aubin v Union Carbide Corp. 177, S0. 3d 489 (Fla. 2015)

55.    The Named Plaintiff re-alleges as if fully set forth, each and every allegation set forth herein.

56.    Old GM and New GM, at all times relevant to this action, were engaged in the design, testing, manufacture, distribution, and sale of automobiles, including the Defective Vehicles.

57.    The Defective Vehicles were expected to and did reach users and consumers without substantial change in the condition in which it was sold.

58.    The Defective Vehicles were in a defective condition creating risk of harm to a user or a consumer, including Named Plaintiff.

59.    The defects set forth herein caused the Named Plaintiff's injuries.

60.    Under the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement wherein New GM acquired certain Old GM assets, New GM assumed product liability for crashes involving Old GM vehicles causing personal injury, loss of life or property damage. As identified therein, the Named Plaintiff has claims for crashes involving Old GM vehicles that caused personal injury, loss of life or property damages and New GM is therefore liable to the Plaintiff.

61.    These injuries and losses were caused by New GM's designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling and/or supplying the Defective Vehicles in a defective condition for which it is strictly liable to the Named Plaintiff pursuant to *Morning Star v Black & Decker Mfg. Co.* (253 S.E.2d 666, W. Va. 1979).  Alternatively, the injuries and losses were caused by Old GM's designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling and/or supplying the Defective Vehicles in a defective condition for which New GM is strictly liable to the Named Plaintiff pursuant to Restatement (Second) of Torts § 402A because these product liabilities were assumed by New GM.

62.    These injuries were caused by New GM's designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling and/or supplying the Defective Vehicles without proper and adequate warnings, instructions, and/or guidelines for safe use for which it is strictly liable to the Plaintiff.  Alternatively, these injuries were caused by Old GM's designing, manufacturing, fabricating, assembling, inspecting, marketing, distributing, selling and/or supplying the Defective Vehicles without proper and adequate warnings, instructions, and/or guidelines for safe use for which New GM is strictly liable to the Plaintiff because these product liabilities were assumed by New GM.

63.     By reason of New GM's assumption of product liability under the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement for crashes involving Old GM vehicles causing personal injury, loss of life or property damage, the failures of Old GM described above that contributed to or were causally connected to the injuries sustained by Named Plaintiff were among the product liabilities of Old GM assumed by New GM.  Independent of any failures by Old GM as described herein, New GM breached its duties owed to the Named Plaintiff as described herein.

64.     Plaintiff would show in the alternative that there was a manufacturing defect in Plaintiff's vehicle concerning the airbag system/passenger restraint system.

65.     As will be shown at trial, all the foregoing knowledge of Old GM in all the preceding paragraphs was inherited by or is imputable to New GM.

**COUNT III- Failure To Warn/Defective Use under Aubin**

66.     Under the June 26, 2009 Amended and Restated Master Sale and Purchase Agreement, New GM expressly assumed liability for post-sale accidents involving Old GM vehicles causing personal injury, loss of life, or property damages. New GM also acquired knowledge of Old GM's activities and the defective Airbag System/Passenger Restraint System /Control Modules via the mind of the employees, officers, managers, books and records obtained and/or acquired as a result of the  June 26, 2009 Amended and Restated Master Sale and Purchase Agreement and subsequent  Sale Order. Thus, the acts or omissions of Old GM are part of the foundation for the liability assumed by New GM. Further, Plaintiff has claims for a post-sale accident involving a New GM vehicle that caused personal injury or property damage and New GM is therefore expressly liable to Plaintiff for Old GM's negligence. New GM is also liable to Plaintiff for its independent, post- Sale negligence.

67.    Old GM was negligent in designing, manufacturing, and providing warnings for the Plaintiff's vehicle, as set forth in the paragraphs above (Airbag System/Passenger Restraint System Defects). Old GM acted unreasonably in manufacturing and selling vehicles with design, manufacturing, and informational defects and concealing such defects from Plaintiff, the public, and NHTSA.

68.    In addition, Old GM's failure to notify NHTSA and Old GM vehicle owners of safety-related defects as required by 49 U.S.C. §30101, et seq. and 49 C.F.R. §§573, 577 constituted negligence per se. These statutes and regulations were enacted for the protection and safety of the public.

69.    Old GM had a duty to ensure that its vehicles were reasonably safe to operate and did not contain defective components, and to produce vehicles with appropriate warning instructions. When Old GM learned that the Plaintiffs' vehicle was defective, it had a continuing duty to warn Plaintiff of the existence of the defect, including after the original sale of the vehicle.

70.    New GM was also negligent in providing warnings about Plaintiffs' vehicles and unreasonably concealing the design, manufacturing, and informational defects that New GM knew existed in Old GM vehicles. New GM had a continuing duty to monitor Old GM vehicles for safety-related defects and warn Plaintiff, the public, and NHTSA about safety- related defects in Old GM vehicles.   This duty is based on the direct and continuing  relationship between New GM and the owners of Old GM vehicles. Among other things, New GM had a statutory duty to warn owners of Old GM vehicles, including Plaintiff, of safety defects and did, in fact, warn owners of Old GM vehicles, including Plaintiff, of the safety defects (though the warning arrived years later than it should have and unreasonably minimized the risk of harm.

71.     In addition, New GM's failure to notify NHTSA and Subject Vehicle owners of safety-related defects as required by 49 U.S.C. §30101, et seq. and 49 C.F.R. §§573, 577 constituted negligence per se. These statutes and regulations were enacted for the protection and safety of the public.

72.     Thus, independent of any failures by Old GM and New GM as described herein, New GM breached its duties to Plaintiff by failing to provide appropriate notice of and repair procedures for the Airbag System/Passenger Restraint System defects in Plaintiff's vehicle. In doing so, New GM departed from the reasonable standard of care required of it.

73.     Old GM's and New GM's negligence proximately caused the injuries and damages sustained by Plaintiff, as set forth herein. New GM's negligence in manufacturing and selling a vehicle containing design and manufacturing defects and Old GM's and New GM's negligence in failing to adequately warn Plaintiffs about known defects in their vehicles and in violating the statutes and regulations that required Old GM and New GM to recall Plaintiffs' vehicles for safety-related defects proximately caused Plaintiffs' inability to avoid the crash made the basis of this lawsuit that left them severely injured or killed.

74.     New GM is liable for compensatory damages based on Old GM's conduct and based on New GM's own independent conduct. New GM is further liable for fair and reasonable damages for pain and suffering, medical expenses, and/or damages as may be determined by the Court or the jury, as well as costs, expenses, and reasonable attorneys' fees.

**DAMAGES**

75.     The Named Plaintiff prays for damages against the Defendant in a sum of money in excess of the jurisdictional amount of Seventy-Five Thousand Dollars ($75,000.00) plus costs and any such other relief to be deemed just and equitable to which they are entitled.

76.     As a direct and proximate result of New GM's wrongful conduct, Plaintiff has been (and continues to be) damaged in the form of: (a) past and future pain and suffering; (b) past and future physical impairment; (c) past and future physical disfigurement; (d) past and future mental anguish; (e) past and future loss of consortium and/or loss of services; (f) past and future loss of income and/or lost earning capacity; (g) past and future reasonable and necessary medical expenses; and (h) past and future loss of enjoyment of life' (i) loss of function; (j) prospective medical care and medication costs; and (k) property damage to his vehicle sustained in the crash. All of the damages sustained by Plaintiffs were reasonably foreseeable by New GM, and exceed the minimum jurisdictional limits of this Court. All conditions precedent to Plaintiffs' claims for relief have been performed and/or occurred.

**PRE-JUDGMENT INTEREST AND POST-JUDGMENT INTEREST**

77.     Lastly, Plaintiffs are entitled to pre-judgment and post-judgment interest (to be determined).

**JURY DEMAND**

78.     The Named Plaintiff requests a trial by jury.

**PRAYER**

79.     For the foregoing reasons, the Named Plaintiff prays that the Defendant be cited to appear and answer herein, and that upon final hearing of the cause, judgment be entered for the Plaintiff against Defendant for actual damages, as alleged, together with pre-judgment interested (from the date of injury through the date of judgment) at the maximum rate allowed by law; post-judgment interest at the legal rate, costs of court; and such other and further relief to which Named Plaintiff may be entitled at law or in equity.

Dated: April 27, 2018

RESPECTFULLY SUBMITTED,

/s/ *Mitchell A. Toups*
Mitchell A. Toups (TX Bar # 20151600)
WELLER, GREEN, TOUPS & TERRELL, LLP
2615 Calder Ave., Suite 400
Beaumont, TX 77702
Telephone: (409) 838-0101
Facsimile: (409) 832-8577
Email:  matoups@wgttlaw.com

James R. Dugan, II
David Scalia
Lanson Bordelon
THE DUGAN LAW FIRM, APLC
365 Canal Street, Suite 1000
New Orleans, Louisiana 70130
Telephone: (504) 648-0180
Facsimile: (504) 648-0181

Gregory K. Evans (TX Bar  No. 24002065)
Law Offices of Gregory K. Evans, PLLC
3900 Essex, Suite 690
Houston, TX  77027
(713) 840-1299
Facsimile:  (281) 254-7886
Email:  greg@gevanslaw.com

*Attorneys for Plaintiffs*